# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

## Steel *against* Smith.

The Act of Congress made to carry out the 4th article and 1st section of the federal constitution, which declares that judicial records proved in the manner prescribed " shall have such faith and credit given to them in any court within the United States, as they have by law or usage in the courts of the State from whence they are or shall be taken," does not preclude inquiry into the jurisdiction of the court, or the right of the State to confer it.

*Held*, therefore, that a judgment in foreign attachment, affecting to bind, not only the property attached, but the persons of defendants not citizens of the State or within its precincts at the time, is to be treated as a nullity by a court in another State, which is called on to enforce it by action, though it would bind the persons of the defendants in the courts and by the laws of the State in which it was rendered.

THIS was a case stated in an action of debt brought in the District Court of *Allegheny* county, on a judgment in foreign attachment recovered in the Commercial Court of New Orleans. The proceedings were according to the course of the civil law; and it appeared on the record that the plaintiffs were merchants in partnership at Louisville, Kentucky, and that the defendants, residing in Pittsburgh, were joint owners of the steamer Norfolk, which was attached by the plaintiffs for the price of supplies advanced to the credit of the boat. They set forth in their petition,

[Steel v. Smith.]

filed according to the laws of Louisiana, that the defendants were indebted to them for supplies advanced at the request of J. Smith, captain and part owner, and prayed that the defendants be cited to answer, and condemned to pay *in solido*.    A citation thereupon issued to J. Smith, as a part owner present, and the representative, by the laws of Louisiana, of those who were absent;/after which a general appearance was entered by a solicitor, who for answer denied all the allegations in the petition.    Other creditors intervened, whose suits were consolidated with that of the plaintiffs, and the court pronounced the following sentence or decree: " The court, after due consideration of the evidence adduced, order and adjudge that the plaintiffs and intervenors hereinafter named recover from the defendants, John Smith, S. Hart, Whitesides, Campbell & Co., owners of the steamboat Norfolk *in solido*, the sums hereinafter stated, with privileges as hereinafter set forth on said steamer, viz., (reciting a number of intervening claims having privilege on the boat for certain proportions of their demands, as of first, second or third class); and that the plaintiffs and intervenors hereinafter named receive from said defendants, *in solido*, the following sums, but without any privilege on the boat, to wit: A. Isham, $392.31; *R. Steel & Co.*, $852.51; J. C. Hyde, $50; and that defendants pay costs of suit."    The question on this decree was, whether it gave the plaintiffs a right of action against the defendants personally; and the District Court determining that it did, the point was argued on a writ of error to this court by

Shaler, for plaintiff in error, who cited *Baldwin's Const. View* 3, 5; 3 *Bl. Com.* 24; *Com. Dig. Egarement*, c. 1; 2 *Roll.* 804, c. 11, 12; *Barnes's Notes* 325; 1 *Kent* 260; 6 *Wheat.* 129; 1 *Dall.* 261; 5 *Johns.* 37; 8 *Johns.* 197; 15 *Johns.* 142; 13 *Wend.* 408; 5 *Paige Ch. R.* 304; 9 *Mass.* 468; 3 *J. Marshall R.* 606; 13 *Johns.* 206; 6 *Pick.* 246; 8 *Louisiana R.* 292; 10 *Louis. R.* 120; 10 *Serg. & Rawle* 240; 14 *Louis. R.* 417; *Story on Part.* 635; 1 *Peters* 228; 7 *Watts* 333; 1 *Blachford* 252; 11 *Com. Law R.* 51; 1 *Watts & Serg.* 340; 10 *Louis. R.* 599; 9 *Louis. R.* 73; 4 *Louis. R.* 309; 1 *Louis. R.* 230; *Christy's Dig.* 34–5.

M'Candless, for defendant in error, cited 6 *Pick.* 232; *Peters's R.* 155; 1 *Kent* 260; 10 *Serg. & Rawle* 240; 9 *Serg. & Rawle* 259.

The opinion of the Court was delivered by

GIBSON, C. J.—Simply as a foreign judgment, this *ex parte* proceeding would not be even *primâ facie* evidence of personal liability.    Jurisdiction of the person or property of an alien is founded on its presence or *situs* within the territory.    Without this presence or *situs*, an exercise of jurisdiction is an act of usurpation.

[Steel v. Smith.]

An owner of property who sends it abroad subjects it to the regulations in force at the place, as he would subject his person by going there. The jurisdiction of either springs from the voluntary performance of an act, of whose consequences he is bound to take notice. But a foreigner may choose to subject his property, reserving his person: and it is clear that jurisdiction of property does not draw after it jurisdiction of the owner's person: consequently, there can be no rightful action by the tribunals on the foundation of jurisdiction acquired by the attachment of property, which reaches beyond the property itself. It has so often been determined that a judgment in foreign attachment cannot be made to bind the person of the debtor, that it would be a waste of words to cite authorities to the point; yet it is worth while to quote an observation of Mr Justice Story, (*Confl. of L.* § 540), that a foreign country would not enforce a judgment recovered in a court of the parent country, for contumacy in remaining abroad, against a citizen or subject who had neither appeared to nor had notice of the suit, however conformable the proceedings might be to the local laws. How much stronger the case of a foreigner, owing no allegiance to the country or obedience to its legislation!

In cases of foreign attachment heretofore, the judgment did not purport to bind the person; here there is a formal recovery from the defendants *in solido*, without privilege on the property attached, and it is consequently *in personam.* Nor is this a novelty in the jurisprudence of Louisiana. In *Hill* v. *Bowman*, (14 *Louisiana R.* 445), it is said that where there has been service of citation on a curator, the judgment is necessarily so; and the question is, whether it is within the purview of the constitution, which declares that "full faith and credit shall be given in each State to the public Acts, records and judicial proceedings of every State;" and that Congress may, by general laws, prescribe the manner in which such Acts, records and proceedings shall be proved, and *the effect* thereof."

The power thus delegated has been executed in words which bear that the judicial records of a State, when proved in the manner prescribed, " shall have such faith and credit given them as they have by law or usage in the courts of the State from whence the said records are or shall be taken;" and if it were not open to these defendants to inquire into the legality of the jurisdiction assumed over their persons, they would certainly be concluded. The record shows that there was service on one of the joint owners, which in the estimation of the law of the court is service on all; for it is affirmed in *Hill* v. *Bowman*, already quoted, that the State of Louisiana holds all persons amenable to the process of her courts, whether citizens or aliens, and whether present or absent. It was ruled in *George* v. *Fitzgerald*, (12 *Louisiana R.* 604), that a defendant, though he reside in another State, having neither domicil, interest nor agent in Louisiana, and having never been within

its territorial limits, may yet be sued in its courts by the instrumentality of a curator appointed by the court to represent and defend him. All this is clear enough, as well as that there was in this instance a general appearance by attorney, and a judgment against all the defendants, which would have full faith and credit given to it in the courts of the State. But that a judgment is always regular when there has been an appearance by attorney, with or without warrant, and that it cannot be impeached collaterally for anything but fraud or collusion, is a municipal principle, and not an international one having place in a question of State jurisdiction or sovereignty. Now, though the courts of Louisiana would enforce this judgment against the persons of the defendants if found within reach of their process, yet, where there is an attempt to enforce it by the process of another State, it behooves the court whose assistance is invoked to look narrowly into the constitutional injunction, and give the statute to carry it out a reasonable interpretation. Though we have no decision of the Supreme Court of the United States, we have the authority of Mr Justice STORY (*Com. on Const.* § 1307) for saying that, though such a proceeding is put, in general terms, on the footing of a domestic judgment, it is open to inquiry into the jurisdiction of the court to pronounce it, as well as into *the right of the State itself to exercise* AUTHORITY OVER THE PERSONS or the subject-matter; for which he refers to *Bessel* v. *Briggs*, (9 *Mass.* 462); *Shumway* v. *Stillman*, (4 *Cowen* 292); and *Borden* v. *Fitch*, (13 *Johns.* 121); to which might be added, as of equal authority, our own decision in *Benton* v. *Burgol*, (10 *Serg. & Rawle* 240). What, then, is the right of a State to exercise authority over the persons of those who belong to another jurisdiction, and who have perhaps not been out of the boundaries of it? "The sovereignty united to domain," says Vattel, "establishes the jurisdiction of the nation over its territories or the countries which belong to it. It is its province, or *that* of its sovereign, to exercise justice in all places under its jurisdiction, or the country which belongs to it; to take cognizance of the crimes committed and the differences that arise in the country." "On the other hand," adds Mr Justice STORY, (*Confl. ch.* 14, § 539), no sovereignty can extend its process beyond its own territorial limits, to subject other persons or property to its judicial decisions. Every exertion of authority beyond these limits is a mere nullity, and incapable of binding such persons or property in other tribunals." And for this he cites *Picquet* v. *Swan*, (5 *Mason R.* 35–42). Not to multiply authorities on a point so plain, it will be sufficient to add the name of Mr Burge, (1 *Confl.* 1), who says it is a fundamental principle, essential to the sovereignty of every independent State, that no municipal law, whatever its nature or object, should, *proprio vigore*, extend beyond the territory of the State by which it has been established." And again, (3 *Burge Confl.* 1044), " that the authority of every judicial tribunal, and

[Steel v. Smith.]

the obligation to obey it, are circumscribed by the limits of the territory in which it is established." Such is the familiar, reasonable and just principle of the law of nations; and it is scarce supposable that the framers of the constitution designed to abrogate it between States which were to remain as independent of each other, for all but national purposes, as they were before the revolution. Certainly it was not intended to legitimate an assumption of extra-territorial jurisdiction which would confound all distinctive principles of separate sovereignty; and there evidently was such an assumption in the proceedings under consideration. The court did not, indeed, begin by appointing a curator to represent the absentees, of whose defence he would probably have been ignorant or careless; but they did, as bad by assuming that the joint owner present was the partner and attorney of his fellows absent—an assumption unfounded in fact or the law of any other community. A judgment following such a beginning, carries with it no presumption of justice. But I would perhaps do the jurisprudence of Louisiana injustice, did I treat its cognizance of the defendants as an act of usurpation. It makes no claim to extra-territorial authority, but merely concludes the party in its own courts, and leaves the rest to the constitution as carried out by the Act of Congress. When, however, a creditor asks us to give such a judgment what is in truth an extra-territorial effect, he asks us to do what we will not, till we are compelled by a mandate of the court in the last resort. To give the same effect to a criminal law, would not be a greater invasion of State rights; and it will scarce be asserted that a State would be bound to deliver up one of its inhabitants as a fugitive from justice, to answer for an act done within his own State. Yet the constitutional provision embraces all proceedings, whether criminal or civil. It seems, then, that it was not intended to efface the lines of territorial jurisdiction for the origination of process, but only to give extra-territorial effect to judgments of tribunals having jurisdiction of the persons or the property in the first instance; and we must consequently treat all others as nullities.

Judgment for plaintiffs reversed, and judgment for defendants.