## Wallace, Appellant, v. United Electric Company et al.

211    473
214    393

*Equity—Foreign defendant—Service of process—Jurisdiction—Parties— Act of April 6, 1859, P. L. 387.*

Where a bill in equity for discovery and account against a domestic and a foreign corporation is served on the foreign corporation in the state of its domicile by virtue of an order of court made under the provisions of the Act of April 6, 1859, P. L. 387, the service on the foreign corporation will be set aside. The act is ineffectual to render valid such extraterritorial service of process in proceedings in personam.

Argued Jan. 4, 1905. Appeal, No. 91, Jan. T., 1904, by plaintiff, from decree of C. P. No. 1, Phila., Sept. T., 1903, No. 1238, setting aside service of bill in equity in case of Allan B. Wallace v. United Electric Company of New Jersey and United Gas Improvement Company. Before DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for discovery and an accounting.

Motion to set aside service of the bill.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the order setting aside the service of the bill.

*Max Herzberg*, for appellant.—The service of process upon the United Electric Company of New Jersey was in conformity

with the provisions of the act of assembly, Pennsylvania, of April 6, 1859, section 1, and was proper: Eby's App., 70 Pa. 311; Coleman's App., 75 Pa. 441; Huntzinger v. Phila. Coal Co., 11 Phila. 609; B. & L. Assn. v. Mayer, 20 Phila. 413; Vail v. Osburn, 174 Pa. 580; Martin's App., 13 W. N. C. 167; Hirst v. R. R. Co., 6 Phila. 93; Eshbach v. Slonaker, 1 Pa. Dist. Rep. 32; York v. Texas, 137 U. S. 15 (11 Sup. Ct. Repr. 9); Kauffman v. Wootters, 138 U. S. 285 (11 Sup. Ct. Repr. 298); Pennroyer v. Neff, 95 U. S. 714; Harkness v. Hyde, 98 U. S. 476; Parrott v. Insurance Co., 5 Fed. Repr. 391; McHenry v. R. R. Co., 25 Fed. Repr. 65; Wilson v. Seligman, 36 Fed. Repr. 154; Improvement Co. v. Stevenson, 66 Fed. Repr. 633; Scott v. Noble, 72 Pa. 115; Noble v. Thompson Oil Co., 79 Pa. 354.

*R. Stuart Smith,* for appellee.—No sovereignty can extend its process beyond its own territorial limits, to subject either persons or property to its judicial decisions: Steel v. Smith, 7 W. & S. 447; Scott v. Noble, 72 Pa. 115; Noble v. Thompson Oil Co., 79 Pa. 354; Pennoyer v. Neff, 95 U. S. 714; Ralston's Appeal, 93 Pa. 133; Story on the Conflict of Laws (7th ed.), chapter 14, sections 539 et seq.

If, therefore, the correct interpretation of the act of 1859 is that it aims to authorize the service of process outside of the state of Pennsylvania upon a nonresident defendant in an action in personam, the act is, to that extent, ineffectual: McHenry v. R. R. Co., 25 Fed. Repr. 65; B. & L. Assn. v. Mayer, 20 Phila. 413.

The correct interpretation of the act of 1859 is that it authorizes services of process outside of the state on nonresident defendants, only in actions in rem or quasi in rem: Eby's App., 70 Pa. 311; Coleman's App., 75 Pa. 441; Martin's App., 13 W. N. C. 167.

The case at bar is not a proceeding in rem or quasi in rem; and the order of the court below, setting aside the service of the bill upon the defendant in New Jersey, should be affirmed: Coleman's App., 75 Pa. 441.

OPINION BY MR. JUSTICE BROWN, April 17, 1905:

The first prayer of appellant's bill is for full discovery. Upon

it he relies for the relief asked for in the second. In praying for this discovery he asks that the United Electric Company of New Jersey " be required to set forth and discover particularly, the truth of all the matters set out in the said bill, paragraph by paragraph," as if it had been particularly interrogated thereto. The preliminary decree asked for, and the one first to be made and enforced, if the appellant is entitled to relief, is discovery of the matters alleged to be within the knowledge of the two defendants named in the bill. He asks for discovery because he needs it; and prays for it, not only from the United Gas Improvement Company, which he alleges is the principal defendant, but from the appellee as well.

A decree for discovery is a personal one to be enforced against the person decreed to make it; and, if the appellee was properly brought within the jurisdiction of the court below personally, a decree that it make discovery could be enforced against it personally by the appellant as his first move to obtain the ultimate relief asked for. In view of this, the proceeding must, as was held by the learned judge below, be regarded as in personam as to the appellee; and the question whether the Act of April 6, 1859, P. L., 387, even if it does authorize extra-territorial service of process from a court of this state, is effectual to acquire jurisdiction over the person of a defendant residing and served in another state, is not an open one.

Before the passage of that act, Chief Justice GIBSON, in discussing the attempt to acquire jurisdiction over the person of the defendant by the extra-territorial service of process, said in Steel v. Smith 7 W. & S. 447 : " Jurisdiction of the person or property of an alien is founded on its presence or situs within the territory. Without this presence or situs, an exercise of jurisdiction is an act of usurpation. An owner of property who sends it abroad subjects it to the regulations in force at the place as he would subject his person by going there. The jurisdiction of either springs from the voluntary performance of an act, of whose consequences he is bound to take notice. But a foreigner may choose to subject his property, reserving his person ; and it is clear that jurisdiction of property does not draw after it jurisdiction of the owner's person; consequently, there can be no

rightful action by the tribunals on the foundation of jurisdiction acquired by the attachment of property, which reaches beyond the property itself. . . . What, then, is the right of a state to exercise authority over the persons of those who belong to another jurisdiction, and who have, perhaps, not been out of the boundaries of it? ' The sovereignty united to domain,' says Vattel, ' establishes the jurisdiction of the nation over its territories or the countries which belong to it. It is its province, or that of its sovereign, to exercise justice in all places under its jurisdiction, or the country which belongs to it; to take cognizance of the crimes committed and the differences that arise in the country.' ' On the other hand,' adds Mr. Justice STORY (Confl. ch. 14, § 539), no sovereignty can extend its process beyond its own territorial limits, to subject other persons or property to its judicial decisions. Every exertion of authority beyond these limits is a mere nullity, and incapable of binding such persons or property in other tribunals.' And for this he cites Picquet v. Swan ( 5 Mason, 35–42 ). Not to multiply authorities on a point so plain, it will be sufficient to add the name of Mr. Burge ( 1 Confl. 1 ), who says it is a fundamental principle, essential to the sovereignty of every independent state, that no municipal law, whatever its nature or object, should, proprio vigore, extend beyond the territory of the state by which it has been established.' And again ( 3 Burge Confl. 1044 ), ' that the authority of every judicial tribunal, and the obligation to obey it, are circumscribed by the limits of the territory in which it is established.' Such is the familiar, reasonable and just principle of the law of nations; and it is scarce supposable that the framers of the constitution designed to abrogate it between states which were to remain as independent of each other, for all but national purposes, as they were before the revolution. Certainly it was not intended to legitimate an assumption of extra-territorial jurisdiction which would confound all distinctive principles of separate sovereignty; and there evidently was such an assumption in the proceedings under consideration." Speaking of the Act of 1859, under which the court made the order for the extra-territorial service of process upon the appellee, SHARSWOOD, J. in Coleman's Appeal, 75 Pa. 441, in stating that it has not been the policy of our jurisprudence to bring nonresidents within

the jurisdiction of our courts, unless in very special cases, said: "In proceeding against them for torts, even property belonging to them cannot be reached by process, and in cases of contract nothing but the property can be affected unless the defendant voluntarily appear and submit to the jurisdiction. We may congratulate ourselves that such has been the policy, for nothing can be more unjust than to drag a man thousands of miles, perhaps from a distant state, and in effect compel him to appear and defend under the penalty of a judgment or decree against him pro confesso. The act of 1859 ought, therefore, to receive a construction in harmony with this policy. There exists no good reason why courts of equity should be invested with a more enlarged jurisdiction against nonresidents than courts of law." This was followed by the case of Scott v. Noble, 72 Pa. 115, in which we held that Noble was not bound by process directed to be served upon him by the supreme judicial court of Massachusetts outside the state, though he had accepted service of the writ in the state of Pennsylvania. By the Act of March 13, 1815, P. L. 150 regulating proceedings in divorce, the act provides for service upon the respondent "wherever found," but in Ralston's Appeal, 93 Pa. 133, we said of that act: "It declares 'upon due proof at the return of the said subpœna that the same shall have been served personally on the said party wherever found, or that a copy had been given to him or her fifteen days before the return of the same,' a divorce may be decreed. It is contended in case the libellee in divorce is not found within the bailiwick of the sheriff, the latter may, under this act, depute some person to make the service in another state. If a legal service could thus be made in Delaware it can be in California. Such cannot be a true construction of the statute. The language 'wherever found' cannot be so construed as to give to a court of this state extra-territorial power to bring within its jurisdiction the person of a citizen and resident of another state. The property found within this state of a non-resident may be reached and charged and sold in the enforcement of a debt resting on a contract without any personal service on the debtor. In the case of an ordinary debt, the person of a non-resident defendant not found within the state cannot be reached by any process issued by a court of common law. In

cases where the language of the statute would seem to give extra-territorial power this court has denied its exercise. Thus the 16th section of the Act of 13th June, 1836, relating to the removal of paupers, authorizes them to be removed 'at the expense of the district to the city, district or place where ·he was last legally settled, whether in or out of Pennsylvania.' It has, however, been held the provision for a removal into another state is of no force or effect: Overseers of Limestone v. Overseers of Chillisquaque, 6 Norris 294. The first section of the Act of 6th April, 1859, authorizes any court of this commonwealth having equity jurisdiction, in any suit in equity instituted therein concerning property within the jurisdiction of the said court, to order and direct that any subpœna or other process to be had in such suit be served on any defendant therein ' then residing or being out of the jurisdiction of said court wherever he, she or they may reside or be found.' It further provides for the proof of service both within and without the limits of the United States. It was held in Coleman's Appeal, 75 Pa. 41, that process thus issued in this state and served in another state on a resident thereof could not give jurisdiction of the person thus served." In the federal courts the same view is entertained. By a statute of the state of Oregon provision was made for service upon a non-resident by publication. In Pennoyer v. Neff, 95 U. S. 714, it appeared that judgment had been entered against Neff on process which the plaintiff undertook to have served upon him extra-territorially, by publication, in conformity to the statute. Judgment was entered in the proceeding against him, and, in holding that he was not bound by it, through Mr. Justice FIELD, it was said: " Where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely in personam, constructive service in this form upon a non-resident is ineffectual for any purpose. Process from the tribunals of one state cannot run into another state, and summon parties there domiciled to leave its territory and respond to proceedings against them." In the circuit court of the United States, for the western district of this state, in the case of McHenry v. New York P. & O. R. R. Co., 25 Fed. Repr. 65, the court of common pleas of Westmoreland county had made an order of

service on aliens in pursuance of the act of 1859, but it was said by the circuit court: "It is, indeed, true that pursuant to an order of the court of common pleas, claimed to be authorized by the Pennsylvania Act of April 6, 1859, P. L. 387, process has been served on those defendants in England, where they reside, but, clearly, such extra-territorial service was ineffectual to bring them within the jurisdiction of the court or make them parties to the suit: Pennoyer v. Neff, 95 U. S. 714."

The service upon the appellee was ineffectual to bring it into this jurisdiction, and the order of the court below setting it aside was properly made.    That order is now affirmed and this appeal dismissed at the costs of appellant.