Atlantic Seaboard Natural Gas Company *v.*
Whitten, Appellant.

Argued April 9, 1934.   Before FRAZER, C. J., SIMPSON,
KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*E. G. Potter,* with him *F. D. Gallup, A. F. Jones* and *James S. Berger,* for appellant.

*W. K. Elliott,* with him *R. M. Elliott,* of *Elliott & Elliott,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 30, 1934:

On November 18, 1932, Mrs. Esther Ellen Whitten, appellant, owned a tract of land in Oswayo Township, Potter County. She was a nonresident of Pennsylvania, her habitation being Honolulu. Mrs. Whitten received at the latter place a cable from the appellee, the Atlantic Seaboard Natural Gas Company, asking her for her "best cash price" for a gas lease on her Oswayo farm. On November 19th, she cabled that her price was $1,000. On the same day the gas company by cable accepted the offer. On December 1, 1932, Mrs. Whitten received the lease submitted by the gas company and also a check for. $1,000. She refused to sign the lease. The gas company filed a bill of complaint setting forth the facts and praying (1) that a decree be made directing specific performance by Mrs. Whitten of the agreement of leasing; (2) that a decree be made directing that upon failure of Mrs. Whitten "to make and execute lease according to the decree first made that the prothonotary of the Court of Common Pleas of Potter County execute said lease as and for the respondent and in her stead and that the consideration therefor be deposited to her credit in The First National Bank of Coudersport, Pa., and the original check be cancelled."

Upon the application of the gas company, the court on December 12, 1932, made the following order: "That service of process be made of the within bill of complaint between The Atlantic Seaboard Natural Gas Company v. Esther Ellen Whitten of 28 B. Ilima Street, Honolulu, Hawaii, by an adult person and such service properly

authenticated before an officer empowered of the laws of the United States to administer oaths in and for the County of Honolulu, Territory of Hawaii, and such bill of complaint is made returnable to the Court of Common Pleas of Potter County, sitting in equity sixty days from the date of service upon the respondent in said bill." The return of service was duly made on December 23, 1932, by the deputy high sheriff, of the Territory of Hawaii. Thereafter leave was granted by the court to counsel for Mrs. Whitten to appear de bene esse for the purpose of raising the question of jurisdiction of the court, and a rule was granted upon the plaintiff to show cause why the service of the bill of complaint and notice should not be set aside.

If this suit is in personam and not in rem, the extraterritorial service was invalid and must be set aside. "No form of constructive service can give a court power to make a binding decree in personam against a nonresident": Hughes v. Hughes, 306 Pa. 75, 158 A. 874. "Jurisdiction of property does not draw after it jurisdiction of the owner's person": GIBSON, C. J., in Steel v. Smith, 7 W. & S. 447. "No man's right should be prejudiced by the judgment or decree of a court, without an opportunity of defending the right. This opportunity is afforded, or supposed in law to be afforded, by a citation or notice to appear, actually served; or constructively, by pursuing such means as the law may, in special cases, regard as equivalent to personal service": Hollingsworth v. Barbour et al., 4 Peters 466, 474.

"That equity acts in personam is one of the oldest maxims of equity and is a basic principle of equity jurisdiction. Its meaning is that equity deals primarily with the person, and usually only through him with the res": 21 C. J., section 183, page 194.

Decrees against persons directing them to take certain action in respect to property are generally regarded as decrees in personam. See Penn v. Baltimore, 1 Vesey, Sr., 444; Schmaltz v. York Mfg. Co., 204 Pa. 1, 53 A.

522; Massie v. Watts, 6 Cranch (U. S.) 146, and Pennoyer v. Neff, 95 U. S. 714.

It is stated in 23 L. R. A. (N. S.), page 1135: "The general principle is well settled, in the absence of any statutory modification, that a suit to compel the specific performance of a contract to convey real property is a suit in personam, and not in rem," citing Bethell v. Bethell, 92 Ind. 318; Davis v. Parker, 14 Allen 94; Close v. Wheaton, 65 Kan. 830, 70 Pac. 891; Johnston v. Wadsworth, 24 Or. 494, 34 Pac. 13; Hearst v. Kuykendall, 16 Tex. 329; Morgan v. Bell, 3 Wash. 554, 16 L. R. A. 614, 28 Pac. 925.

"In order to enable the court to adjudicate where the subject-matter is within the jurisdiction and necessary parties are not, statutes have in certain cases created a jurisdiction, usually in form personal but actually in rem, and have provided for constructive service in such cases. There can be no valid constructive service without the direct authority of statute, except in certain ancillary and dependent suits or proceedings. Such statutes are always strictly construed, and will not be extended by construction so as to authorize or validate service in cases not falling within their terms": 21 C. J., section 367, page 358.

The only statute invoked by plaintiff as authority for the service made, and now challenged, is the Act of April 6, 1859, P. L. 387, but it is settled in this court that a decree against a defendant personally is not within the purview of that act, and where such decree is sought, the court has no authority under that act to direct service upon the defendant. See Vandersloot v. Pa. W. & P. Co., 259 Pa. 99, 102 A. 422; Lunine v. Penna. Alcohol Permit Board et al., 305 Pa. 162, 157 A. 470; Wallace v. United Electric Co. et al., 211 Pa. 473, 60 A. 1046, and Coleman's App., 75 Pa. 441.

In Lebanon Valley Consolidated Water Supply Co. et al. v. Commonwealth Trust Co., 257 Pa. 284, 101 A. 639, this court held that where a bill in equity was filed in

Lebanon County, and service was made on a corporation in Dauphin County, the bill praying that the defendant be directed to deliver to the plaintiff certain bonds secured by a mortgage upon lands in Lebanon County, under which the defendant was trustee, the service would have to be set aside as not being embraced in that part of the Act of 1859, providing for extraterritorial service where the suit concerns "any charge, lien, judgment, mortgage or encumbrance" upon lands, etc., within the jurisdiction of the court directing the service. In the opinion of the court below which was approved in a per curiam opinion of this court, appears the following language: ". . . . . . To say that because the bonds are secured by a mortgage, or because the value of outstanding bonds may be affected as long as a part of the bonds are unissued, their delivery or nondelivery concerns the lien of the mortgage which is given to secure the bonds, is placing a strained construction upon the plain language of the said act of assembly. The suit concerns the bonds alone and not the mortgage or the lien of the mortgage."

There is a close analogy between that case and the one now before us, for here the suit concerns the execution of a lease, as there the suit concerned the delivery of bonds. The lease if executed would have value because of certain interests it would convey in lands within the jurisdiction of the court directing the service of process; the bonds had value because they were secured by a mortgage on land within the jurisdiction of the court directing the service of process. To hold that the suit praying for the execution of a lease on Pennsylvania land by a nonresident is a suit concerning "any charge, lien, judgment," etc., upon lands, etc., within the jurisdiction of the court directing the service of process "is to put a strained construction" on the Act of 1859. "Service statutes are to be construed strictly": Hughes v. Hughes, supra.

There is a wide distinction between a course of judicial procedure, the object of which is to subject the res to the power of the State directly by the judgment or decree which is entered and a procedure which only affects or disposes of the res by compelling a party to the action to control or dispose of the res in accordance with the mandate or decree. The former is a proceeding in rem; the latter is a proceeding in personam. The suit before us is not specifically directed toward the res; it is directed toward the owner of the res. The status of the res is not in the slightest degree affected until after the suit against the owner is terminated adversely to the latter. Until that stage is reached the suit is entirely a proceeding between persons and not between a person and a certain piece of land as, for example, in condemnation or foreclosure proceeding.

In Hollingsworth v. Barbour, 4 Peters 466, 475, the point was made that a bill for a specific performance was a proceeding in rem. The opinion by Mr. Justice TRIMBLE in the court below, which was adopted by the Supreme Court of the United States, on that point is as follows: "The case under consideration is not properly a proceeding in rem; and a decree in chancery for the conveyance of land has never yet, within my knowledge, been held to come within the principle of proceedings in rem, so far as to dispense with the service of process on the party. There is no seizure nor taking into the custody of the court the land, so as to operate as constructive notice."

No one questions the right of a state to control all property within its territorial limits, but unless a state distinctly provides by statute a procedure whereby a service can be made on a nonresident owner in a suit whose purpose it is to compel the owner to take some affirmative action in respect to property within that state, no court in that state has any power to order such extraterritorial service of its processes. Actions whose object is the seizure and condemnation and sale of prop-

erty are actions in rem. See Pennoyer v. Neff, 95 U. S. 714. In Boswell's Lessee v. Otis et al., 50 U. S. 336, 349, the Supreme Court of the United States, in an opinion by Mr. Justice McLean said: "The property of an individual is subject, in a certain sense, to the law of the state in which it is situated. It is liable for taxes and to such special proceedings against it as the law shall authorize. An attachment may be laid upon it, and it may be sold in satisfaction of an established claim. And the legislature may, perhaps, subject other lands to the payment of the judgment on the attachment after the sale of the lands first attached. But no such proceeding is authorized by the act under which this procedure was had. It is limited to the cases enumerated in the statute."

In the case before us there is no "established claim" against the nonresident defendant to be satisfied by seizure, sale, or conveyance of her land in Pennsylvania. The suit here is one to determine the respective personal rights and obligations of the opposing parties in the gas content of the land in Pennsylvania admittedly owned by this nonresident defendant. It is strictly a suit in personam and before any claim against the defendant can be established in the courts of Pennsylvania, i. e., before it can be adjudicated that the offer and acceptance pleaded constitute a binding contract sufficient to support a decree requiring the defendant to convey to plaintiff rights in the natural gas content of the former's land, she must be legally summoned to answer the claim by a valid process of the Pennsylvania court seeking to exercise jurisdiction over her. The processes of the Pennsylvania courts do not run to Honolulu or to any other place beyond the confines of Pennsylvania except as its statutes have provided for their so running in actions in rem. This is not an action in rem but one in personam.

The very decree prayed for shows that this proceeding is one in personam. The prayer is for a decree "directing specific performance by the respondent of the agree-

ment of leasing." The alternative prayer is for a decree "directing that upon failure of the respondent to make and execute lease according to the decree first made that the prothonotary......execute said lease." This alternative prayer helps plaintiff not at all, for the pleaded prerequisites to this secondary decree are (1) a valid decree of specific performance against the respondent, and (2) a failure on her part to comply with that decree. There can be no valid decree against the respondent until she is brought within the jurisdiction of the court by proper process.

Rules 86 and 87, cited in the opinion of the court below, are of no avail to plaintiff. Rule 86 refers to remedies on "final process to execute any decree," thereby presupposing the existence of a valid decree. There can be no valid decree against a party unless that party is properly before the court entering it. Rule 87 provides that when any act required to be done is not done, it may be performed by the prothonotary in the name of the delinquent party. Neither of these two rules touches the question presented here, which is: Did the court below acquire in this proceeding jurisdiction over a nonresident defendant?

Nor is this action "one brought to quiet title to land," as intimated by the court below. The title to the land is not in controversy. The bill casts no "cloud" on defendant's title, but expressly recognizes that title. It would indeed be anomalous if a bill in equity for the conveyance of an interest in a nonresident's land in Pennsylvania should in itself be construed as "a cloud on defendant's title," and this "cloud" could then be successfully pleaded by plaintiff as a warrant for extraterritorial service of process on a defendant. The case of Arndt v. Griggs, 134 U. S. 316, cited by the court below in its reference to "quieting title," fully recognizes the principle that equity acts in personam and that, in the absence of a statute, a court of equity cannot acquire jurisdiction on a nonresident defendant by publication or other ex-

traterritorial service, but it holds that a state may provide by statute for the bringing before its courts a nonresident who has cast a "cloud" on the title to land within its jurisdiction. The pleadings here present no such case and no such statute is invoked. The only statute invoked as extending the radius of a Pennsylvania court of equity's processes is that of 1859, and, as already pointed out, this does not apply to suits in personam. There is no statute authorizing the service used and challenged here.

The assignments of error are sustained; the order of the court below is reversed; the service of the bill is set aside; appellee to pay the costs.

## Leiser et al., Executors, et al., Appellants, v. Hartel.

Argued May 24, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Mortimer C. Rhone*, with him *Cummings & Gubin, John E. Cupp* and *James F. McClure*, for appellant.

*Russell S. Machmer*, of *Schaffer & Machmer* and *Clair Groover*, for appellee.

OPINION BY MR. JUSTICE KEPHART, June 30, 1934:

The facts in connection with this appeal present a rather startling situation. Jane C. Harrison, a niece of the late Senator Simon Cameron, for many years a senator from Pennsylvania and secretary of war under President Lincoln, lived in Lewisburg, Pennsylvania. She was possessed of considerable property which included land formerly used as a brickyard and three other pieces of real estate, known respectively as "The Harrison Block," "The Mansion," and "The Cameron House." She died in 1932, well advanced in age, and by her will disposed of her property, including this real estate, to the Presbyterian Hospital of Philadelphia as residuary legatee.

Three days after her death, Oscar R. Hartel, a former son-in-law, whose wife had died in 1907, filed with the recorder of deeds two deeds from Mrs. Harrison to him-

self. The first was dated 1909, and the second, 1924. They conveyed to him in fee this real estate mentioned above. The executors and residuary legatee, evidently feeling that there was something irregular about the deeds, brought a bill to remove a cloud on the title, apparently transferred by the will to them, by cancelling the deeds, and also praying for other appropriate relief. The court below dismissed the bill; the hospital and executors appeal.

The validity of these transfers hinges upon the delivery and possession of these deeds. There is no dispute as to their execution.

The court below was largely influenced by what we said in Cragin's Est., 274 Pa. 1. It is undoubtedly correct that when a deed is acknowledged before a proper officer as being signed, sealed and delivered, and the manual possession of the grantee is established, a presumption arises that an absolute and unconditional delivery is intended, unless by act, expression or writing an indication is made of an intention to qualify the formal act. We said quite recently that there could be no delivery in escrow to a grantee: Eaton v. New York Life Ins. Co., 315 Pa. 68. If the facts contained in this record were controlled by the principles laid down in Cragin's Est., supra, we would not depart therefrom in the slightest particular, but they are not.

We said in Cragin's Estate that a proper acknowledgment, with the physical possession of the deed by the grantee, did not conclusively establish an intention to deliver; that the prima facie case, or the presumption arising from recording, or signing, sealing and acknowledging a deed as delivered, accompanied by manual possession by the grantee, is not irrebutable. Such presumption can be overcome by evidence that no delivery was in fact intended and none was made. That conclusion was based on our prior authorities: Devall v. Glover, 250 Pa. 417. In Cable v. Cable, 146 Pa. 451, we said that while manual possession of a properly executed

and acknowledged deed, *"in the absence of suspicious circumstances,"* constitutes "prima facie evidence of delivery," it is, when unaccompanied by direct testimony of a delivery and when surrounded by circumstances raising impressive inferences contrary to every attribute of a conveyance of the property, insufficient to establish an effective delivery: Stewart v. Stewart, 50 Wis. 445, 7 N. W. 369. See Greenleaf on Evidence, volume 2, section 297. Long possession by the grantor, and acts evidencing ownership meanwhile, without recognition of another's rights or of a claim of ownership by a grantee, are sufficient to repel the presumption of delivery arising from a deed alone: Knolls v. Barnhart, 71 N. Y. 474, 478.

Before discussing the testimony of the sole and only witness to the act of delivery, we will state some facts in connection with all this land that occurred in testator's lifetime which were utterly inconsistent with any conveyances of the property. The first deed was executed and left unrecorded for 23 years and the second for 8 years before Mrs. Harrison's death. It was proved that the first deed was in the possession of Mrs. Harrison and in her vault 15 years after its execution. While no mention is made of the whereabouts of the second deed, Hartel was supposed to have taken it with him to Boston. During all these years, so far as the record is concerned, this property was in the name of Mrs. Harrison, as owner. Throughout all this time and until her death she exercised sole and absolute control over all the properties. She rented them and collected the rents; she made repairs to the properties and deducted the cost of these repairs in preparing her income tax returns. She also deducted depreciation on account of the properties, an inconceivable act if she did not own them. She paid the taxes until the time of her death. When the State of Pennsylvania constructed a highway through one of the properties, she claimed the damages from the county and settled therefor with the commissioners, executing a release, in effect a transfer, dated March 13, 1931, where-

in she stated that she was the owner of the property. This release was recorded in the proper office. Hartel owned property close by, which this same highway traversed. He made no claim for any damages to the Harrison land, but did claim damages for his own and executed a similar release which was recorded in the same place where Mrs. Harrison's release was recorded. Mrs. Harrison accounted to the federal government in her tax return for the rents and revenues from these properties. Long after the execution of the first deed, she directed that all the buildings of the brickyard property be torn down, sold and removed from the premises at a price determined by herself. No part of this money was ever turned over to or claimed by Hartel. Mrs. Harrison placed signs on the brickyard property advertising it for sale, and had, up to a short time before her death, a similar sign on the Cameron House property in the town. She took out insurance thereon in her own name. In her will she treated these properties as though she owned them. By her fourth codicil, dated in 1930, 6 years after the second deed, she directed that two old, family servants be permitted to occupy a house, located on the Cameron property, "so long as both or either of them may live." Her will, executed in 1928, provided: "It is my will that he [Oscar R. Hartel] shall have and take no interest whatsoever in my estate or any part thereof, and that he shall receive nothing from me or my estate." *

---

* In Duvall v. Glover, 250 Pa. 417, a deed dated March, 1884, was unrecorded. Another deed, without consideration, was executed and recorded in 1892. The grantor in the deeds died in 1909. The evidence against the presumption of the delivery of the deed to the grantee plaintiff in 1884, which was in his possession, were certain acts with reference to the conduct of the grantor in the first deed subsequent to delivery. In an action of ejectment the finding of the jury against the delivery of the deed to the first grantee was sustained in an opinion by this court.

We are confronted with this situation: The two deeds in the manual possession of Hartel. The 1909 deed was still in the possession of Mrs. Harrison in 1924. The usual presumption attendant on the words "signed, sealed, acknowledged and delivered" loses much, if not all, of its force where the grantor holds possession of the deeds for a long period of time. Following the language of Justice MITCHELL in Cable v. Cable, supra, the circumstances related above attendant upon the acts and conduct of the parties since the execution and delivery of both deeds, were sufficient in and of themselves to overcome any presumption arising from manual possession.

No witness saw the 1909 deed delivered. We are relegated then to the testimony of a single witness to sustain the fact of delivery of the 1924 deed and the manual possession of both deeds. This witness is a brother-in-law of appellee. He lives in Sunbury, some distance from Lewisburg. He says that in September, 1924, he drove to Lewisburg to get Hartel and they stopped by Mrs. Harrison's house. Hartel went into the house, came back, got into the automobile, and on the return to Sunbury from Lewisburg told him that he had obtained the 1909 deed. Whether Hartel saw Mrs. Harrison that day, or whether she gave him the deed, does not appear. No explanation is given as to how he came to get possession of it; he just had it. There is no evidence that Mrs. Harrison was in the house while Hartel was there. This deed was held by him 8 years before it was recorded [23 years after execution]. As stated, he never asserted any ownership over the property. Mrs. Harrison dismantled and sold the building and equipment, erected a large "For Sale" sign on the land, gave her name as the owner, and the county took from her, as owner, a part of the land.

As to the second or 1924 deed, the same witness says he drew it up. When asked where he got his information with which to prepare the deeds, he stated that it was

from the record. "I went there and looked it up. I think I looked at the old William Cameron deed for the purpose of getting my description. Q. You copied it out of the old William Cameron deed, the same as it was? A. Yes,...... Q. And found a description fitting this? A. Yes sir,......"

It was proved conclusively that there was no deed, conveyance, or other record that showed any such description as that contained in the deed from Mrs. Harrison to Hartel covering the "Mansion House," the "Cameron House" or the "Harrison Block." The contradictions are so plain, obvious and material between the Hartel deed and the record, that we must conclude that the witness must have been mistaken in his recollection. Not one of the three descriptions contained in this deed to Hartel could possibly have been taken from the record. There is no such record, and there was no such record when this deed was prepared.

This witness also contradicted himself when he mentioned the place where the instructions were given to him by Mrs. Harrison. In his cross-examination, instead of frankly disclosing all the facts regarding the matter, he was apparently reluctant and hesitant, setting up objections which only persons of his training could possess. In his testimony he said he represented Mrs. Harrison in connection with the making of the deed of 1924. When he was asked: "You were acting to have it deeded to your brother-in-law?" he replied, "I never look a gift-horse in the mouth." "Q. And neither you nor Hartel were looking at a gift-horse that day? A. No, sir. Q. Did you think it was a gift-horse? A. Yes, sir. Q. How did you know it? A. He didn't pay any money for it." He didn't advise his brother-in-law to have his deeds recorded. He knew perfectly well what it meant if they were not recorded. Mrs. Harrison could sell the property to another, convey, mortgage, or otherwise dispose of it.

