## Schein et ux. v. Brasler et ux. No. 1

*M. H. Vernick*, for plaintiffs.
*J. L. Markovitz*, for defendants.

SMITH, P. J., October 14, 1947.—This matter comes before the court on a petition filed by defendants to set aside a service on Charles Brasler and Rose Brasler, residents of Atlantic City, N. J.

The bill of complaint avers that Charles Brasler, the owner and occupant of premises situate 454 East

Wyoming Avenue, Philadelphia, whereon he conducted a candy store, on October 22, 1945, entered into a written bill of sale, conveying the business, fixtures, etc., of the candy store to plaintiffs and the same day executed a lease in writing with the plaintiffs, leasing to them the said premises for a term of five years, at a yearly rental of $1,200, payable in monthly installments. The bill also avers that in accordance with the terms of the said lease, an option was given to plaintiffs to purchase the said real estate for the sum of $12,000 "which said option shall be exercised during the term of this lease".

The bill of complaint further avers that on May 2, 1947 (which is within the terms of the said option), plaintiffs exercised and elected to buy the said real estate for the sum of $12,000, and that they forwarded a written agreement of sale to defendants, fixing July 2, 1947, as the date of the settlement and a check in the sum of $500 as down payment on account of the purchase price. It is also averred that defendants refused to accept either the agreement of sale or the check, and returned them to plaintiffs, saying that Charles Brasler was not willing to sell the property at this time.

Plaintiffs thereupon filed a bill in equity, naming said defendants, setting forth the above facts, and praying:

"(a) That pending this bill, the said Charles Brasler and Rose Brasler, defendants, be specially, and on final hearing, that defendants be perpetually enjoined from mortgaging or encumbering said property in any way, and from selling or conveying the same or any part thereof to any person other than plaintiffs:

"(b) That said defendants specifically perform the said option contract and that they be compelled to accept the deposit money of $500 and to execute the attached agreement of sale of the said premises with plaintiffs for the sum of $12,000, as provided herein

upon the payment of the balance of the purchase money."

Defendants were duly served with process in Atlantic City, N. J., together with a copy of the said bill, under the provisions of the Act of March 20, 1941, P. L. 11, sec. 1.

It is the contention of defendants, whose appearance has been entered specially, that since the action is in personam, the court has no jurisdiction over the persons of defendants and that the said service should be stricken off.

It must be conceded that it is not the policy of our jurisprudence to bring nonresidents within the jurisdiction of our courts unless on very special cases, and in only those cases that come within the provisions of the statutes on the subject. The Act of March 20, 1941, P. L. 11, amending the Act of April 6, 1859, P. L. 387, under which this service was made, provides that any court of the Commonwealth having equity jurisdiction may upon due application authorize service outside of the jurisdiction of such court, in any suit "concerning . . . lands, tenements or hereditaments . . . situate or being within the jurisdiction of such court . . .". In interpreting the Act of 1859, the allegations of the bill, and the prayers of the relief sought for must be considered. This is also true of the Act of March 20, 1941, P. L. 11, amending the Act of 1859.

A reading of the averments in the bill and the prayers thereof will show that plaintiffs are asking for specific performance of the contract and as incidental thereto, are asking that in the meantime defendants be not allowed to mortgage, encumber or dispose of said property to anyone else than plaintiffs.

In the case of Atlantic Seaboard N. Gas Co. v. Whitten, 315 Pa. 29, 31, Mr. Justice Maxey stated:

"If this suit is in personam and not in rem, the extraterritorial service was invalid and must be set aside.

'No form of constructive service can give a court power to make a binding decree in personam against a nonresident': Hughes v. Hughes, 306 Pa. 75, 158 A. 874. 'Jurisdiction of property does not draw after it jurisdiction of the owner's person': Gibson, C. J., in Steel v. Smith, 7 W. & S. 447. . . .

"Decrees against persons directing them to take certain action in respect to property are generally regarded as decrees in personam. See Penn v. Baltimore, 1 Vesey, Sr., 444; Schmaltz v. York Mfg. Co., 204 Pa. 1, 53 A. 522; Massie v. Watts, 6 Cranch (U. S.) 146, and Pennoyer v. Neff, 95 U. S. 714."

And on page 532:

"It is stated in 23 L. R. A. (N. S.), page 1135: 'The general principle is well settled, in the absence of any statutory modification, that a suit to compel the specific performance of a contract to convey real property is a suit in personam, and not in rem', citing Bethel v. Bethel, 92 Ind. 318; Davis v. Parker, 14 Allen 94; Close v. Wheaton, 65 Kan. 830, 70 Pac. 891; Johnston v. Wadsworth, 24 Or. 494, 34 Pac. 13; Hearst v. Kuykendall, 16 Tex. 329; Morgan v. Bell, 3 Wash. 554, 16 L. R. A. 614, 28 Pac. 925."

Mr. Justice Maxey concluded by stating (p. 532) :

"The only statute invoked by plaintiff as authority for the service made, and now challenged, is the Act of April 6, 1859, P. L. 387, but it is settled in this court that a decree against a defendant personally is not within the purview of that act, and where such decree is sought, the court has no authority under that act to direct service upon the defendant. See Vandersloot v. Pa. W. & P. Co., 259 Pa. 99, 102 A. 422; Lunine v. Penna. Alcohol Permit Board et al., 305 Pa. 162, 157 A. 470; Wallace v. United Electric Co. et al., 211 Pa. 473, 60 A. 1046, and Coleman's App., 75 Pa. 441."

It would therefore appear that the prayer for specific performance standing alone being in personam,

the court lacks jurisdiction to bring the persons of defendants before it as the result of this service.

It has been determined in many cases that every State possesses exclusive jurisdiction and sovereignty over property within its territory, and that it has the power to regulate the manner and conditions upon which property situate within such territory, both personal and real, may be acquired, enjoyed and transferred. The moment that plaintiffs exercised their option to buy this land within the provisions of the lease agreement, and forwarded the agreement of sale to defendants with a check in part payment thereof, and defendants breached the said agreement by returning the check and the said agreement, plaintiffs became the beneficial owners of the property, and defendants thereby held the title of the res for them as trustees ex maleficio.

Equity has jurisdiction to protect equitable titles and interest because in such cases, a legal remedy is entirely lacking or at least was so when the jurisdiction was established. The trusts which equity administers and enforces are mainly private trusts arising from contracts expressed or implied. In general it may be said that whoever ex aequo et bono is the owner of the subject matter but has not the legal title thereto may enforce his right in equity against him who has such legal title: 21 C. J. 115, §92.

Defendants do not deny the merits of plaintiffs' claim and under the facts as disclosed in the bill, defendants as the owners of the legal title of this property, have the obligation under the terms of the written lease after the election by plaintiffs, to abide by the terms of the option to convey the said property to plaintiffs. The maxim that equity regards as done that which ought to be done, has been said to be equity's favorite maxim. The principle of it is the basis of many forms of equitable relief and has been said to

be the foundation of all distinctly equitable property rights, estates and interest: 21 C. J. 200, §190. The maxim finds an important application in respect to contracts for the conveyance of real property. Chancery viewing such agreements as though the obligation imposed by them had been met, treats the purchaser or contractee as the owner of the land from the time of making the contract, and as trustee of the purchase money for the vendor, while the vendor is regarded as holding the land in trust for the purchaser until the time the conveyance is finally and formally made and as security for the purchase money: 21 C. J. 202, §194; 39 Cyc. 1301-1304, 1612. Therefore, upon the election by plaintiffs to exercise the said option and forwarding an agreement of sale and a check on account of the final purchase price, and fixing a time for the date of settlement  at which time the full purchase price would be paid, plaintiffs have done everything they could do under the circumstances; then the beneficial title was in them and defendants held the legal title to the land in trust for plaintiffs. The moment that defendants attempted to destroy this status by refusing to abide by plaintiffs' election, they became trustees ex maleficio. It may well be that plaintiffs have a cause of action upon proper pleadings being prepared and since the land is within our jurisdiction of this court, we believe it to be fair and equitable to refuse to dismiss this bill until plaintiffs have an opportunity to amend.

## Decree

And now, to wit, October 14, 1947, the chancellor grants leave that plaintiffs amend their bill in equity, setting forth a new and sufficient cause of action with prayers attached thereto which may give the court jurisdiction over the persons of defendant.

NOTE.—See Schein et ux. v. Brasler et ux. No. 2, 62 D. & C. 165.