## Hamilton Equipment, Inc. v. Onamia Corporation

*John L. Hamaker* and *Robert Ruppin*, for plaintiff.
*Arnold, Bricker, Beyer & Barnes*, for defendant and intervenor.

*Barley, Snyder, Cooper & Mueller*, for garnishee.

WISSLER, P. J., March 26, 1964.—This matter is before the court on preliminary objections to defendant's second preliminary objections raising a question of jurisdiction and a rule to marshal securities.*

As to plaintiff's preliminary objections to defendant's second preliminary objections raising a question of jurisdiction, on or about September 6, 1963, plaintiff, Hamilton Equipment, Inc., sent a copy of the complaint in this action by registered mail to defendant, Onamia Corporation, at its place of business in Minnesota. Defendant filed preliminary objections to the service raising the question of jurisdiction. To these preliminary objections, plaintiff filed the following preliminary objections:

"(I)—MOTION TO STRIKE OFF—(1) The present Preliminary Objections violate Section (b) of Rule 1028 of the Pennsylvania Rules of Civil Procedure, because the defendant previously filed preliminary ob-

---

* For prior opinion see 58 Lanc. 473, reversed at 411 Pa. 525 (ed. note).

jections without raising the question of jurisdiction raised by the present objections; (2) The Preliminary Objections to the service of the Complaint are not such preliminary objections as are permitted under Rule 1017(b) ; (II)—DEMURRER—(3) The Preliminary Objections are not sufficient in law, as they are merely to the service of the Complaint and do not raise a question of jurisdiction; (III)—MOTION FOR A MORE SPECIFIC PLEADING—(4) Defendant alleges in its objections that the writ of foreign attachment was not served on defendant and that jurisdiction in personam was not acquired over it, without stating the basis of its allegation. Defendant has not filed preliminary objections to the service of the writ or taken any other proceedings to contest the service. Plaintiff therefore moves the Court, if the defendant's present Preliminary Objections be not overruled for any of the first three reasons assigned above, to require the defendant to state the specific facts on which it relies to support its allegations that the writ was not served on defendant and that jurisdiction in personam was not acquired over it."

In plaintiff's first preliminary objection, plaintiff moves to strike off on the ground that defendant had already filed preliminary objections and did not raise the present question of jurisdiction at that time. It is true that Pennsylvania Rule of Civil Procedure No. 1028(b) provides that all preliminary objections shall be raised at one time, the purpose of which rule is to reduce the dilatory portion of the pleading stage to a single step. But, in the instant case, defendant's previous preliminary objections were filed January 2, 1963, and the present objections filed were to the action of plaintiff in sending a copy of the complaint in the present action by registered mail to defendant at its place of business in the State of Minnesota on September 6, 1963, some eight months after the filing of the

first preliminary objections and, therefore, cannot be said to relate back to an occurrence prior to the first preliminary objections. This court does not feel that Pa. R.C.P. 1028(b) contemplates such a situation.

The second and third preliminary objections in substance are to the effect that an objection to the service of the complaint cannot be raised by preliminary objections and that an objection to the service of the complaint does not raise a jurisdictional question. When the present case was before the Supreme Court, it, in 411 Pa. 525, sustained defendant's preliminary objection to the service of the. complaint and likewise overruled plaintiff's motion to dismiss because no question of jurisdiction was involved and, in so doing, the Supreme Court, at page 528 of its opinion, stated:

"In dismissing appellant's preliminary objections, the lower court was under the mistaken impression that appellant was contesting the quasi in rem jurisdiction conferred by the writ of attachment. The court below treated appellee's petition for substituted service of the complaint as if the complaint was the same complaint required by Pa. R. C. P. 1265 dealing with foreign attachment. It failed to distinguish between the service of the complaint used to *commence proceedings* and acquire in personam jurisdiction under §1011 of the Business Corporation Law [Act of May 5, 1933, P. L. 364, as amended] (original process), and the complaint used to *plead* in proceedings already commenced by a praecipe for a writ of foreign attachment under Pa. R. C. P. 1265 (secondary process)." Likewise, in Pellegrini v. Roux Distributing Co., Inc., 170 Pa. Superior Ct. 68, 73, the court approved the general principles as stated in 6 C. J. S., Appearances, §13 as follows: " 'Broadly stated, any action on the part of defendant, except to object to the jurisdiction over his person which recognizes the case as in court, will constitute a general appearance . . .'; but, 'although an

act of defendant may have some relation to the cause, it does not constitute a general appearance, if it in no way recognizes that the cause is properly pending or that the court has jurisdiction, *and no affirmative action is sought from the court.*' "

Plaintiff's fourth objection was not pressed.

Defendant's preliminary objections raise the question whether when plaintiff on or about September 6, 1963, caused to be served on defendant by registered mail the complaint in question in the State of Minnesota was good service. It seems clear that the complaint is not original process. In the case of corporations, by Pa. R. C. P. 2180 service either is made on the corporation, or there is substituted service on the Secretary of the Commonwealth. The validity of the foreign attachment as acquiring quasi in rem jurisdiction is not, nor could it be, questioned. The service of the original process on corporations is governed by Pa. R. C. P. 2180(a)(1) which, as relevant to the instant case, authorizes service on corporations by serving "an executive officer, partner or trustee of the corporation or similar entity." According to the sheriff's return, he served the writ on "Onamia Corporation, formerly Onamia Manufacturing Company, the within named Defendant, by handing a true and attested copy thereof to James Sorenson, Pilot." The court can look only to the return to determine the kind of service made. The return on its face shows that the writ was not served on an executive officer, nor do plaintiff's depositions show that at the time of service of this writ James Sorenson was an executive officer and, therefore, the requirements of Pa. R. C. P. 2180 were not met and personal jurisdiction over defendant was not acquired. The court, accordingly, dismisses plaintiff's preliminary objections to defendant's second preliminary objections and sustains defendant's preliminary objec-

tions to the service on September 6, 1963, of plaintiff's complaint on defendant.

Plaintiff in the above action of assumpsit, Hamilton Equipment, Inc., also filed a petition for order to marshal securities in which it avers, inter alia:

"(2) The said action was begun by a foreign attachment on November 13, 1962, pursuant to which the Sheriff of Lancaster County attached certain personal property of the defendant, to wit, a twin engined airplane, bearing license No. N3127P; (3) That according to the Complaint filed herein, plaintiff's cause of action against the defendant arose out of a breach of contract on December 18, 1961 and defendant admitted the validity of the plaintiff's claim at various times between June 13, 1962 and October 9, 1962; (4) That Union Loan and Thrift Corporation has filed in this Court a Petition to Intervene herein for the reason that it claims to have a lien on the said airplane prior to that acquired by the attachment, which lien it claims is based on a chattel mortgage; (5) That the said chattel mortgage was given on September 28, 1962 by the defendant to Kimberley Leasing Corporation for Thirty-four Thousand Six Hundred and Twenty-five Dollars ($34,625.00) as collateral security for the payment of a note bearing the same date, payable in forty-seven (47) monthly payments of Seven Hundred Twenty-one and 35/100 ($721.35) each and a final payment of Seven Hundred Twenty-one and 55/100 Dollars ($721.55), the first payment to become due October 28, 1962, and with interest on unpaid balances at 6.25 per cent. per annum. The said note was signed by James V. Hegranes, as president and treasurer of the defendant, and also by James V. Hegranes, individually, as a joint and several maker; (6) That both the note and the chattel mortgage were assigned the same day, September 28, 1962, by Kimberley Leasing Corporation to Union Loan and Thrift Corporation; (7) That a judgment

was entered on the above note in the Court of Common Pleas of Lancaster County on February 14, 1963 on behalf of Union Loan and Thrift Corporation, the assignee, against Onamia Corporation, the above defendant, for Thirty-two Thousand Four Hundred Seventy and 19/100 Dollars ($32,470.19), by virtue of a separate undated authorization to confess judgment attached to the said note when filed in the Prothonotary's Office; (8) That the said chattel mortgage covers, in addition to the airplane attached herein, a large amount of other personal property; . . . (10) That in addition to the security of the articles of personal property covered by the chattel mortgage, Union Loan and Thrift Corporation has a claim against James V. Hegranes individually as a joint and several maker of the said note; (11) That your petitioner has no other security for its claim than the lien of its attachment on the said airplane; and (12) That all the personal property covered by the chattel mortgage, except the airplane attached, is located in the State of Minnesota."

All of these allegations are admitted by an answer filed October 10, 1963, by Harris C. Arnold, Jr., counsel for Union Loan and Thrift Corporation, and on January 15, 1964, Union Loan and Thrift Corporation, intervening claimant, filed the following answer:

"(1) Union Loan and Thrift Corporation (hereinafter referred to as claimant), a Minnesota corporation with its principal place of business at 386 Minnesota Street, Saint Paul, Minnesota, was permitted to intervene as a party defendant in this action by reason of an order entered by the Court on December 9, 1963; (2) On November 13, 1962, the Sheriff of Lancaster County, pursuant to the Writ of Foreign Attachment issued in this case, attached a 1957 Piper Apache twin-engined airplane, license No. N3127P, the property of defendant, Onamia Corporation. The said airplane

was brought into the Commonwealth of Pennsylvania on November 13, 1962; (3) Claimant is the owner and holder of a note given by defendant, dated September 28, 1962, in the amount of Thirty-four thousand Six hundred Twenty-five Dollars ($34,625.00), on which there is an unpaid balance, past due, of Thirty-two thousand Four Hundred Seventy Dollars and 19/100 ($32,470.19); (4) Claimant is also the holder, as security for said note, a chattel mortgage dated September 28, 1962, given by said defendant, covering and conveying to the mortgagee the security or lien interest in, inter alia, the said 1957 Piper Apache airplane; (5) The said chattel mortgage is duly recorded in the State of Minnesota according to the laws of that state; (6) A financing statement giving notice of said security interest was filed on February 14, 1963, in the Office of the Secretary of the Commonwealth and in the Office of the Prothonotary of Lancaster County. The financing statement is recorded in the said Prothonotary's Office in Financing Statement Docket No. 28, Page 371; and (7) The said security interest is a first lien prior in effect to the interest of defendant in the said airplane."

It is specifically admitted that all of the personal property covered by the chattel mortgage, except the airplane attached in Pennsylvania, is in the State of Minnesota.

What the plaintiff is asking, as set forth in paragraph 14 of the petition is: "That equity requires that Union Loan and Thrift Corporation be compelled to exhaust its remedies by proceeding against the remaining personal property covered by the said chattel mortgage, exclusive of the said airplane, and by proceeding against the said James V. Hegranes as a maker of the note before asserting a lien against the said airplane or proceeding against the same." The question thus presented is that of jurisdiction. Does this court

have the power to order Union Loan and Thrift Corporation, intervening claimant, to issue an execution on property in Minnesota and apply the proceeds to the debt.

In Pennoyer v. Neff, 95 U. S. 714, Mr. Justice Field at page 733 said that "proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process of law." These words have been quoted and approved in innumerable cases. In our own State this principle was followed in Wallace v. United Electric Company, 211 Pa. 473, Giampalo v. Taylor, 335 Pa. 121, Alpern v. Coe, 352 Pa. 208, stating that the authority of a court cannot extend beyond the territorial limits of the State by which it was created.

The doctrine of marshaling securities, or subrogation, is an equitable doctrine. In Shimp's Assigned Estate, 197 Pa. 128, 149, the court pointed out that the principle of subrogation "is founded on principles of equity and benevolence, . . . it is not to be allowed except in a clear case, and where it works no injustice to the rights of others . . . it is not to be used to overthrow the equity of another, and thus work injustice."

It would seem to follow from this that the doctrine of marshaling is not applicable unless all the parties and all the property involved are subject to the court's control.

A creditor may hold several securities for the same debt: Baum v. Tonkin, 110 Pa. 569; Miners Sav. Bank of Pittston, Pa. v. United States, 110 F. Supp. 563. He may issue his remedy on all or one with but one satisfaction: Schuylkill Trust Company v. Sobolewski, 325 Pa. 422; Stofflet v. Kress, 342 Pa. 332; Evans v. Provident Trust Company of Phila., 319 Pa. 50. He may relinquish his collateral security altogether without the consent of other creditors: Jennings v. Loeffler, 184 Pa. 318.

It might appear equitable, as contended by plaintiff, to require Union Loan and Thrift Corporation to first exhaust its security in Minnesota and apply the proceeds to the diminution of its claim before it can litigate here its right to priority of payment over plaintiff-creditor. But under the law as it appears to this court equity cannot extend beyond the territorial limits of the state by which it was created, nor can it compel a party who has two or more securities to elect which he will proceed against for payment.

And now, March 26, 1964, for the foregoing reasons plaintiff's preliminary objections to defendant's second preliminary objections are overruled. Defendant's preliminary objections to the service of plaintiff's complaint on defendant, Onamia Corporation, are sustained and the rule granted on plaintiff's petition to marshal securities is discharged.