**BROWNEWELL, Plaintiff, v. COLUMBUS CLAY MANUFACTURING COMPANY et, Defendants.**

Common Pleas Court, Franklin County.

No. 183364. Decided March 7, 1955.

514

Miller & Miller, Columbus, for plaintiff.
Willis H. Liggett, Columbus, for defendants.

## OPINION

By LEACH, J.

### HEARD ON DEMURRER OF DEFENDANT CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO

This cause is now before the Court on a demurrer to the petition filed by defendant Crocker First National Bank of San Francisco, hereafter referred to as defendant bank on the ground that it appears on the face of the petition that this Court has no jurisdiction of the subject of this action.

It appears that by decision dated June 23, 1954, entered on the Journal June 26, 1954, another branch of this court overruled an identical demurrer filed by defendant Edszen B. Landrum. Plaintiff contends, therefore, that this previous ruling of the court should dispose of the demurrer now under consideration. An examination of the decision of June 23, 1954, however, reveals that the Court did not actually pass on the merits of the claim that this Court does not have jurisdiction of the subject of the action. The decision was based solely on the conclusion that "Only one demurrer is allowed **to a party** as to a particular pleading." Defendant Edszen B. Landrum had previously filed a demurrer asserting (a) That the petition did not state facts

which showed a cause of action and (b) That the action was not brought within the time limited for the commencement of such actions. This demurrer had been overruled by a third branch of this court by decision of November 27, 1953, journalized December 2, 1953. We find, therefore, that no branch of this Court had ever passed directly on the specific question of whether or not this Court has jurisdiction of the subject of this action. Since this is the first and only demurrer filed by the bank, the reasoning of the decision of June 23, 1954, that "only one demurrer is allowed to a party as to a particular pleading" has no application.

Plaintiff herein is a Franklin County resident. Defendant Edszen B. Landrum is the brother of the plaintiff and resides in San Francisco, California. Defendant bank is located in San Francisco and is the Executor of the estate of Emma B. Landrum, such estate being administered by the Probate Court of San Francisco County, California. Emma B. Landrum was the mother of plaintiff and of defendant Edszen B. Landrum. Defendant Columbus Clay Manufacturing Company is an Ohio corporation with its principal place of business in Franklin County, Ohio. Defendant Rush Creek Clay Company is an Ohio corporation with its principal place of business in Perry County, Ohio. Defendant Frederick M. Brownewell, is the Ancillary Administrator with the Will Annexed of the Estate of Emma B. Landrum, having been appointed such by the Probate Court of this county.

The petition alleges that the bank has in its possession a certificate of stock in the amount of forty shares issued by Columbus Clay Manufacturing Company to and in the name of Emma B. Landrum on June 10, 1928, and a certificate of stock in the amount of forty shares issued by Rush Creek Clay Company to and in the name of Emma B. Landrum on June 10, 1928; that each of such certificates had been transferred from G. C. Landrum, father of plaintiff, to Emma B. Landrum, mother of plaintiff, the original certificates having been issued to G. C. Landrum on June 1, 1926.

The petition further recites:

"Plaintiff further says that on or about the fifth day of August, 1926, said G. C. Landrum made a gift of said shares to his daughter, the plaintiff herein, and from said date to on or about April 15, 1927, plaintiff had possession of said shares, to all of which defendants, Columbus Clay Manufacturing Company, Rush Creek Clay Company and Edszen B. Landrum, had knowledge. On or about the 15th day of April, 1927, plaintiff delivered said shares to said Emma B. Landrum, Mother of plaintiff and Executrix of the Estate of Said G. C. Landrum. for transfer to plaintiff; that said Emma B. Landrum did not transfer said shares to plaintiff, but on January 10, 1928, fraudulently had the same transferred to herself. Plaintiff thereupon protested to said Emma B. Landrum and defendants, Columbus Clay Manufacturing Company and Rush Clay Creek Company, at which time, said Emma B. Landrum stated that said shares and some additional shares in the defendant companies would be willed to plaintiff, and that in reliance upon said representations of said Emma B. Landrum, plaintiff took no legal action against her Mother, said Emma B. Landrum, to recover said shares. Said Emma

B. Landrum died testate on the 9th day of May, 1951 in San Francisco, California and said Will did not will said shares to plaintiff but willed the same to her son, brother of plaintiff, Edszen B. Landrum, a defendant herein."

The petition prays for injunctive relief, both temporary and permanent, and that "defendants be ordered to transfer this stock and pay accrued dividends from May 9, 1951, to plaintiff." In order to determine the jurisdiction of this Court over the subject of the action, it is necessary, of course, to determine just what is the "subject" of this action. Just what is the nature of the action and what relief can this Court afford plaintiff if all of the allegations of the petition are proven?

Another branch of this court by decision on a demurrer of Edszen B. Landrum on November 27, 1953, held that "This is an action to enforce a trust and is clearly equitable * * * the mother, who held the stock in trust * * * induced the daughter to refrain from enforcing the trust during her lifetime on the promise that her will would protect the daughter's rights. Her conduct was, therefore, fraudulent and could not be discovered until after her death."

On the authority of Kershaw v. Snowden, 36 Oh St 181, we are inclined to disagree as to the conclusion there expressed that this is an action to enforce a trust. The first paragraph of the syllabus of that case reads:

"A plaintiff sued an administrator for money placed in the hands of his intestate, which it was averred was so received upon the 'express trust,' to be repaid to the plaintiff on the death of the intestate. Held that the transaction did not constitute an equitable trust, but merely created the relation of debtor and creditor between the intestate and the plaintiff."

It would appear that when the daughter delivered the certificates to the mother as executrix of the estate of her father on April 15, 1927, for transfer to the daughter and when the mother instead had them transferred to her own name, there was a conversion by the mother and possibly a breach of her duties as executrix of the father's estate. We may take judicial notice of the fact that under Ohio law such certificates standing in the name of the father, were included in his estate and of the fact, therefore, that the transfer to the mother was pursuant to order of the Probate Court. At that time the daugher did nothing to assert any claim to the certificates either by claim filed with the Probate Court or by action in any other court but instead accepted the statement of the mother that "said shares and some additional shares" would be willed to the daughter. By such acceptance the daughter waived any claim which she might have had to legal ownership of the certificates and acquiesced in the inclusion of such certificates as a part of the assets of the estate of her father.

In legal effect we believe that the petition alleges a contract to make a will which was breached by the mother. If a trust existed, such of course would have been in effect from April 15, 1927 on and would not have come into existence only upon the death of the mother on May 9, 1951. The existence of such a trust would mean that the daughter could have brought an action to "enforce the trust" by com-

pelling delivery of the certificates from the mother to the daughter at any time during the lifetime of the mother. It would not appear, however, that she could have done so since she had in legal effect transferred her interest in the shares to the mother in return for the mother's agreement to make a certain will. In this connection it will be noted that plaintiff apparently assumes in the petition that full ownership of the certificates was in the mother until the time of her death since plaintiff prays that defendants pay accrued dividends to her from May 9, 1951, the date of the mother's death.

If the petition alleges a cause of action for breach of a contract to make a will, this Court, of course, has no jurisdiction of the subject of the action. Such would be a claim for damages for such breach brought against the bank as executor in the California courts where personal service could be had against such executor. Such a claim would not involve a transfer of the stock itself and, of course, any judgment rendered would have to be satisfied out of all the assets of the estate and not solely from those assets devised to the brother. Incidentally it should be noted that the "trust" theory would assume that the daughter is entitled to a transfer of the stock regardless of whether the assets of the estate over liabilities would permit the transfer in kind of the stock in question to the son to whom it was devised in the absence of any claim by the daughter. This claim is made by the daughter even though by consenting to her mother passing title to the stock by will, she in effect acquiesced in its inclusion in her mother's estate.

In the balance of this opinion, however, we will accept the theory that the petition states an action to enforce a trust and that some court would have the authority to direct that the stock itself, either the certificates or the shares, or both, be transferred to the plaintiff. Under such a theory it is the contention of the plaintiff that the "situs" of the stock is in Ohio in view of the fact that it was issued by Ohio corporations with their principal places of business in Ohio. Service therefore was had on the bank and the brother under the provisions of §11292 GC (now §2703.14 R. C.). This statute authorizes service by publication "In an action which relates to or the subject of which is * * * personal property in this state, when the defendant has or claims * * * an actual or contingent interest therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, and such defendant is not a resident of this state or is a foreign corporation or his place of residence cannot be ascertained."

There is no question as to the power of this state to enact statutes providing for constructive service on non-resident defendants in actions where the controversy relates to property which is within the jurisdiction of the court. 126 A. L. R. 664. Such actions are spoken of as being in rem or quasi in rem as contrasted with in personam. They are based on the theory that no personal judgment need be made against the non-resident defendant since the Court itself has the full power to make an order directing the disposition of the property itself which order will effectively dispose of the dispute between the parties. It seems, therefore, that the issue presented here is whether this Court has the authority to make such an order. In other words, if plaintiff estab-

lishes the right to have the shares transferred to her can **this** Court make an order which will effectively do so?

This brings us to a consideration of the "situs" of the stock or in more exact language the "situs" of the certificates and the "situs" of the shares and the effect, if any, of the passage in Ohio of the Uniform Stock Transfer Act.

While "situs" has a fixed meaning when applied to real property and a fairly definite meaning when applied to tangible personal property, its attempted application to intangible personal property has not produced very satisfactory results. We quote from Davies Ohio Corporations, Sec. 25:

"The idea of a fixed situs for shares has proved a source of confusion. The share certificate has a physical location, but a share is something more than the certificate; a share is one of the units into which the legal relations of the shareholders as a group have been divided. 'There can be,' concludes one writer, 'no actual "situs" of a share of stock. If "situs" is to be used in the sense of physical location it might better be abandoned entirely. What Professor Powell has said of the debt is equally applicable to the corporate share: "It isn't that kind of an animal. Any talk about its location is necessarily a medley of metaphor and analogy." "Situs simply means the place where shares may effectually be dealt with." Or perhaps one should say places, because it is not impossible that several jurisdictions may deal effectually with the same shares of stock. Nor need the place be the same for every purpose, for perhaps a jurisdiction which cannot deal effectually with shares for one purpose can for a different purpose. "Situs" would seem to be pretty much what the courts make it. At different times, and for different purposes, they have made it the domicile of the owner, the place where the certificate is located, the state of incorporation, the place where the corporation owns property and does business.' "

See also Fletcher Cyclopedia Corporations, Sec. 5101.

While considered as having a "situs" for tax purposes in the state of the domicile of the owner of the certificate, in the absence of a Uniform Stock Transfer Act, shares were formerly held to have a "situs" at the domicile of the corporation for purposes of jurisdiction in rem or quasi in rem. The state of the domicile of the corporation therefore was considered as the proper forum to determine litigated matters as to the ownership of such shares. 131 A. L. R. 203; 145 A. L. R. 1393.

The effect of a passage of a Uniform Stock Transfer Act on this matter appears to be in dispute. The courts in at least two cases have adhered to the view that the provisions of the Uniform Stock Transfer Act, in many respects identifying the shares with their certificates, have not altered the conclusions that, in actions respecting the right, title, or ownership of stock in a domestic corporation, the courts of a corporation's domicile have jurisdiction by constructive service of process upon a non-resident defendant. Harvey v. Harvey, 290 Fed. 653; McQuillen v. National Cash Register Co., 13 Fed. Supp. 53.

On the other hand, other courts have taken a contrary view, at least where the action seeks to effect a transfer of the certificates as well as the shares. We quote again from Davies Ohio Corporations, Sec. 25:

"In the absence of an enactment such as the Uniform Stock Transfer Act, shares are uniformly held to have a situs at the domicile of the corporation for the purpose of jurisdiction in rem or quasi in rem. The effect of the Uniform Stock Transfer Act, generally speaking, is to embody the shares in the certificate, and where the Act is in force in the state of incorporation, the situs of the shares is that of the physical location of the certificate, even though such location is a foreign state. In the Restatement of Conflict of Laws the rules as to jurisdiction over shares have been stated as follows:

"'(1) Shares in a corporation are subject to the jurisdiction of the state in which the corporation was incorporated.

"'(2) The share certificate is subject to the jurisdiction of the state within whose territory it is.

"'(3) To the extent to which the law of the state in which the corporation was incorporated embodies the share in the certificate, the share is subject to the jurisdiction of the state which has jurisdiction over the certificate.'"

In Gallagher v. Rogan, 185 Atl. 707 (Supreme Court of Pennsylvania) an action was brought by the administrator of an estate, alleging that defendant, a resident of another county, had obtained stock from the decedent by fraud and undue influence. Constructive service was had on the non-resident defendant on the basis that the res, the shares, was situated in the county where the corporation was domiciled. The Court distinguished that case from the case of Jellenik v. Huron Copper Mining Co., 177 U. S. 1, which is the landmark case deciding before the passage of any Uniform Stock Transfer Acts that suits to determine disputes of ownership of stock may be brought in the state of the domicile of the corporation and constructive service had upon non-resident defendants, stating:

"The present suit, however, is not one in which there is any claim made against the company or its directors with reference to the status of the stock or any assessment or lien upon it, but is concerned merely with the ownership of the certificates, and therefore is subject to the well-established doctrine that they, like other personal property, are located at the domicile of their owner. * * *

"It is clear, therefore, that no property of defendant Delia M. Rogan was within the county of Philadelphia when this action was instituted. Even were the fact otherwise, it would not avail plaintiff, because the mere presence of property within the jurisdiction does not, by virtue of the Act of 1859, permit the bringing in of the nonresident owner of such property where the decree sought is in personam. * * * The present suit is not a proceeding in rem, but seeks a personal decree against defendant Delia M. Rogan for the retransfer of the property involved. As stated in Atlantic Seaboard Natural Gas Company v. Whitten, supra, 315 Pa. 529, at page 534, 173 A. 305, 307, 93 A. L. R. 615, 'There is a wide distinction between a course of judicial procedure, the object of which is to subject the res to the power of the state directly by the judgment or decree which is entered and a procedure which only affects or disposes of the res by compelling a party to the action to control or dispose of the res in accordance with the mandate or decree. The former is a

proceeding in rem; the latter is a proceeding in personam. The suit before us is not specifically directed toward the res; it is directed toward the owner of the res. The status of the res is not in the slightest degree affected until after the suit against the owner is terminated adversely to the latter. Until that stage is reached, the suit is entirely a proceeding between persons and not between a person and a certain piece of land as, for example, in condemnation or foreclosure proceeding.' "

We believe that the reasoning of this case is particularly applicable to the instant case. Here, too, there is no claim made against either of the corporations or its directors with reference to the status of the stock and' this case is concerned merely with the ownership of the certificates. It was the certificates which the father allegedly gave to the daughter, which the daughter turned over to the mother and which the mother now seeks to will to the son. Furthermore, for reasons set forth in more detail later, it would appear that plaintiff could not have the relief which she seeks without an actual transfer of the certificates by the bank as executor and, of course, an order by this Court to the bank to transfer such certificates would be a judgment in personam and not in rem.

This same general reasoning was followed by the district court of the Southern District of Maine in Pennsylvania Company for Insurance, etc. v. United Railways of Havanna and Regla Warehouses, 26 Fed. Supp. 379. The Court therein held in an action begun by attachment that while for many purposes the so-called "situs" of shares of a corporation is in the home state of the corporation, in the State of Maine as between a stockholder and third parties, the "situs" is identified with the certificate under the provisions of the Uniform Stock Transfer Act.

In **Ohio State Life Insurance Company v. Sharp, 20 Abs 497,** the Court of Appeals of this district held that in view of the provisions of the Uniform Stock Transfer Act of Ohio, the Probate Court had no authority to direct a corporation to cancel upon its records a stock certificate for shares of its capital stock and to order the issuance of a new certificate in lieu thereof when such certificate was neither lost nor destroyed but held in another state, since neither the Probate Court nor its administrator could surrender the certificate to the corporation.

In LeVeque Company v. Ross, 31 O. N. P. (N. S.) 185, Judge Reynolds of this court held that in view of the provisions of the Ohio Uniform Stock Transfer Act, attachment could not be had of shares of stock merely because the corporation issuing the same was within the jurisdiction of the Court where the certificates were held out of state. Judge Reynolds cited with approval the case of Hotel Gibson Company v. Cino Theatre, 30 O. N. (N. S.) 41, and cited with disapproval the case of **Maescher v. Sammann, 22 O. L. R. 681,** wherein a contrary conclusion had been reached.

While these cases dealt with attachment and not with disputes of "ownership," it would seem that the same basic reasoning should apply herein. Here as in the attachment cases, is a dispute between third parties which in no way involves any claim against the company or its directors with reference to the status of the stock.

The case of **Knight, Exe. v. Shutz, 141 Oh St 267**, involved a situation where the defendant had obtained certain stock certificates by duress and fraud from the decedent. An action was brought in the Common Pleas Court of Stark County, where defendant was ordered to assign and deliver such stock certificates to the executor. Upon failing to do so, she was found guilty of contempt and imprisoned pending performance. Without surrendering the certificates, she was then released from jail and thereafter sold or delivered one of the certificates in question in the open market. She was again committed to jail and later released without having complied with the order of the court to surrender the certificates. Thereupon an action was brought in the Court of Common Pleas of Stark County by the executor against the several corporations which had issued the certificates which defendant had refused to surrender, praying among other things, that these corporations and their transfer agents be ordered to issue in the name of the executor certificates of stock in lieu of the certificates held by the defendant.

The Supreme Court affirmed the lower courts which had held that the Common Pleas Court lacked authority to compel the issuance of certificates of stock in lieu of the certificates held and outstanding. They concluded that "She may still be compelled to surrender the certificates."

The Court concluded that the Uniform Stock Transfer Act applied to all certificates of stock issued by Ohio corporations since July 1, 1911, that this act is all inclusive and admits of no exception, that such stock certificates possessed the quality of negotiability, that the title to a stock certificate **and the shares represented thereby** can be transferred only by delivery of the certificate properly endorsed or accompanied by a separate document containing a written assignment or a Power of Attorney to assign or transfer the certificate or the share represented thereby and that a Court is without authority to compel a corporation to pay dividends to anyone except a registered holder of its stock.

Here, as in the Knight case, the stock certificate allegedly was procured by fraud. Such stock certificates are outstanding and under the ruling of the Supreme Court title to the certificates and the shares represented thereby can be transferred only by delivery of the certificates properly endorsed. It would appear therefore, that the relief which plaintiff seeks, namely, a transfer of the certificates and the shares cannot be accomplished except by delivery of the outstanding certificates properly endorsed to the Ohio corporations. To accomplish this, an order requiring defendant bank to deliver such certificates so endorsed would be required. Such, however, in our opinion, would not be a judgment in rem but a judgment in personam. It is our opinion that this Court lacks such power to make such an order.

The demurrer of defendant Crocker First National Bank of San Francisco therefore is sustained for the reason that even assuming this action to be that to enforce a trust, this Court lacking the power to make any order directing Crocker First National Bank of San Francisco as executor of the estate of Emma B. Landrum, to deliver the certificates of stock in their possession, endorsed to the plaintiff, to the Ohio corporations, therefore lacks jurisdiction of the subject matter of this action. The demurrer is sustained. Entry may be prepared accordingly.